J-S44036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                              :            PENNSYLVANIA
                                              :

                    v.                        :

ARTTRELL WELLS,                  :

                  Appellant        :           No. 599 EDA 2017

Appeal from the Judgment of Sentence January 19, 2017
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0002899-2015

BEFORE: LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:         **FILED OCTOBER 31, 2018**

Arttrell Wells ("Wells") appeals from the judgment of sentence imposed

following his convictions of robbery, aggravated assault, criminal conspiracy,

and possession of an instrument of crime ("PIC").[1] We affirm.

In its Opinion, the trial court set forth the relevant factual background

as follows:

> Complainant, Rashad Harris [("Harris")], a reluctant
> Commonwealth witness, testified that on January 18, 2015,
> [Wells], in concert with others, went to [Harris]'s hotel room and
> asked both [Harris] and his girlfriend for money. [Harris] and his
> girlfriend informed [Wells] that they did not have any money.
> Later that day, [Harris] heard that [Wells] was on his way to [the
> home of Eric Miller ("Miller"),] located at 5513 Spring Street in the
> city and county of Philadelphia. [Harris] went to [] Miller's home
> with the belief that [Wells] had stolen something from him and
> [Harris] wanted to get his things back.
>
> [Harris] testified that when he questioned [Wells] about his
> stuff, [Wells] swung at him and they began fighting. Once the

---

[1] **See** 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 2702(a)(1), 903, 907(a).

fight began, other individuals who were also present, joined in and began punching [Harris]. During the fight, [Wells] punched [Harris] approximately 20 times[,] and then, while [Harris] was on the ground getting punched by [] Miller, [Wells] grabbed a drinking glass and threw it at [Harris]. The glass struck [Harris] in the face and shattered. As a result, [Harris] sustained a broken nose, broken cheekbone, numerous stitches to his nose, and lacerations to his face.

After the assault, [Harris] testified that his brother[, Aaron Harris ("Aaron"),] "told me to give him the money out of my pocket" and "dug in my pocket and took my money, my cell phone, [and] my car keys." [Harris] testified that he "fought [his] way out of the house." [He stated: "]I was trying to get out of the house and they attacked me one more time, not trying to let me out of the house." Once he finally managed to get out of the house, [Harris] "saw a cop car. The cop car stopped and called an ambulance." After police banged on [Miller's door], [Wells], along with [Aaron,] "went out the back door, [and] went over the fence." Furthermore, while in the hospital, [Harris] testified that [Aaron] called to see if he was okay, when [Wells] then "got on the phone and told me don't do that snitch stuff."

\*\*\*

On February 4, 2015, [Wells] was arrested and charged with numerous offenses, including, *inter alia*[:] [r]obbery – [t]hreatening [s]erious [b]odily [i]njury; [a]ggravated [a]ssault; [c]onspiracy – [r]obbery – [t]hreatening [s]erious [b]odily [i]njury; and [PIC].

On November 21, 2016, [Wells] waived his right to a jury trial. At the conclusion of his [bench] trial, [Wells] was found guilty on all charges. … [Wells] was sentenced to a total of 4½ to 9 years of incarceration in a state correctional facility, followed by 5 years of probation.

… On February 2, 2017, [Wells] timely filed the instant appeal to the Superior Court of Pennsylvania. On February 6, 2017, the [trial court] filed and served [Wells] an Order pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing [Wells] to file and serve a Statement of Errors Complained of on Appeal within 21 days of the [trial court]'s [o]rder.

On February 27, 2017, [Wells] timely filed his [Concise Statement]….

Trial Court Opinion, 8/16/17, at 1-2, 3-5 (italicization added; citations and footnotes omitted; paragraphs reordered).

On appeal, Wells raises the following question for our review: "Was the evidence insufficient to support all of [Wells's] convictions?" Brief for Appellant at 2.

When considering a challenge to the sufficiency of the evidence, we ascertain

whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Melvin**, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

Wells alleges that the evidence was insufficient to support his convictions for robbery, aggravated assault, criminal conspiracy, and PIC. *See* Brief for Appellant at 4-12.

Concerning his conviction of robbery, Wells argues that he did not steal from Harris, and that the evidence did not establish accomplice liability. *Id.* at 6, 8-10. Wells claims that there was no evidence that he intended to commit a theft from Harris, that he made an agreement with Aaron to steal from Harris, or that he aided or attempted to aid Aaron to steal from Harris. *Id.* at 8-10. Wells asserts that Aaron took Harris's belongings at the end of the encounter, after Wells had ceased to participate. *Id.* at 9.

Concerning his conviction of conspiracy to commit robbery, Wells alleges that the evidence did not establish that he had an agreement with Aaron to steal from Harris. *Id.* at 10, 12. Wells argues that he had no reason to believe that Aaron was going to steal from Harris, and he took no action to enforce the demands for money made by Aaron. *Id.* at 12. According to Wells, his mere presence and involvement in the fight is insufficient to support his conviction of conspiracy to commit robbery. *Id.*

Finally, concerning his conviction of aggravated assault and PIC, Wells contends that the evidence is insufficient to support the convictions because he acted in self-defense. *Id.* at 13, 14. Wells alleges that Harris started the fight, that he threw the glass at Harris in self-defense, and that the Commonwealth did not meet its burden of disproving self-defense. *Id.* at 14.

Wells specifically argues that (1) he believed he was in danger of serious bodily injury when Harris asked Miller for help; (2) he did not provoke or continue the fight, and (3) he was unable to retreat to safety. *Id.* at 14-15. Wells states that his actions were in self-defense of himself, and of Aaron, who was also provoked by Harris. *Id.* at 16; *see also id.* (claiming that since he threw the glass in self-defense, it was not an instrument of crime).

In its Opinion, the trial court defined each of the offenses Wells contests, cogently and thoroughly addressed his sufficiency challenges, and concluded that the Commonwealth established all of the requisite elements of the offenses beyond a reasonable doubt. *See* Trial Court Opinion, 8/16/17, at 6-10; *see also id.* at 3-5 (wherein the trial court sets forth a recitation of the evidence presented at trial). We agree with the sound reasoning and determination of the trial court, as set forth in its Opinion, and therefore affirm on this basis with regard to Wells's sufficiency of the evidence claims. *See id.* at 6-10.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/31/18

# FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## COURT OF COMMON PLEAS, CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :

    v.                    :

ARTTRELL WELLS             :

599 EDA 2017

CP-51-CR-0002899-2015

**FILED**

## OPINION

**AUG 16 2017**

Appeals/Post Trial
Office of Judicial Records

## STATEMENT OF THE CASE

This appeal arises out of an assault that took place at the home of Eric Miller, located at 5513 Spring Street, on January 18, 2015. Defendant is appealing his convictions on the charges of Robbery, Aggravated Assault, Conspiracy[1], and Possession of an Instrument of a Crime with Intent. Defendant complains there was insufficient evidence to support his convictions. Defendant's complaints are without merit

## PROCEDURAL HISTORY

On February 4, 2015, Defendant was arrested and charged with numerous offenses including, inter alia· Robbery – Threatening Serious Bodily Injury[2], Aggravated Assault[3];



CP-51-CR-0002899-2015 Comm v WELLS, ARTTRELL
Opinion

7990009901

---

[1] Co-conspirator Eric Miller, 544 EDA 2017
[2] 18 Pa C S A § 3701(a)(1)(ii)
[3] 18 Pa C S.A § 2702(a)

Conspiracy – Robbery – Threatening Serious Bodily Injury[4]; and Possession of an Instrument of a Crime with Intent (PIC)[5]

On November 21, 2016, Defendant waived his right to a jury trial. At the conclusion of his waiver trial, Defendant was found guilty on all charges On January 19, 2017, Defendant was sentenced to 4 ½ to 9 years of incarceration in a state correctional facility on the robbery charge. Defendant was also sentenced to a consecutive period of probation of 5 years on the charge of robbery and three concurrent periods of probation of 5 years on the charges of aggravated assault, conspiracy, and PIC, all to be served consecutively to the period of incarceration. Defendant was sentenced to a total of 4 ½ to 9 years of incarceration in a state correctional facility, followed by 5 years of probation.

On February 2, 2017, Todd Michael Mosser, Esq., entered his appearance for the Defendant On February 2, 2017, Defendant timely filed the instant appeal to the Superior Court of Pennsylvania. On February 6, 2017, the Court filed and served Defendant an Order pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing Defendant to file and serve a Statement of Errors Complained of on Appeal within 21 days of the Court's Order.

On February 27, 2017, Defendant timely filed his Statement of Matters Complained of on Appeal, raising three issues, namely·

1. The evidence was insufficient to support Defendant's conviction for robbery because there was no evidence that Defendant took or attempted to take anything from Mr Harris.

2. The evidence was insufficient to [s]upport Defendant's convictions for robbery and conspiracy to commit robbery because there is no evidence from which to reasonably infer that Defendant agreed with anyone to do anything to Mr. Harris, particularly since it was Mr Harris who approached Defendant and threw the first

[4] 18 Pa C S A § 903
[5] 18 Pa C S A § 907(a)

2

punch. Even if something was removed from Mr Harris' person, that act was not perpetrated by Defendant Wells and there is no evidence, other than his mere presence at the scene, from which to infer that he had any knowledge that a theft would occur or that he agreed with anyone to commit or aid in the commission of a theft  The insufficiency of the evidence regarding the conspiracy conviction is further evinced by the fact that it was Mr Harris who approached Defendant, not the other way around

3. The evidence was insufficient to support Defendant's convictions for aggravated assault and PIC because the Commonwealth did not disprove that Defendant was acting in self-defense after Mr. Harris served as the aggressor, approached Defendant, and threw the first punch in this incident.

## EVIDENCE AT TRIAL

Complainant, Rashad Harris, a reluctant Commonwealth witness, testified that on January 18, 2015, Defendant, in concert with others, went to Complainant's hotel room and asked both Complainant and his girlfriend for money.  Complainant and his girlfriend informed Defendant that they did not have any money.  (N.T., 11/21/16, pg. 24)  Later that day, Complainant heard that Defendant was on his way to Eric Miller's home located at 5513 Spring Street in the city and county of Philadelphia.  (N T., 11/21/16, pgs. 13, 26) Complainant went to Mr  Miller's home with the belief that Defendant had stolen something from him and Complainant wanted to get his things back  (N.T., 11/21/16, pgs. 13 - 15, 26)

Complainant testified that when he questioned Defendant about his stuff, Defendant swung at him and they began fighting. (N.T , 11/21/16, pg. 26)  Once the fight began, other individuals who were also present, joined in and began punching Complainant  (N.T , 11/21/16, pg. 26)  During the fight, Defendant punched Complainant approximately 20 times and then, while Complainant was on the ground getting punched by Mr. Miller, Defendant grabbed a drinking glass and threw it at Complainant. (N.T., 11/21/16, pgs  30

3

– 31, 55 - 56) The glass struck Complainant in the face and shattered. (N.T., 11/21/16, pgs 26, 31) As a result, Complainant sustained a broken nose, broken cheekbone, numerous stiches to his nose, and lacerations to his face. (N.T., 11/21/16, pgs. 31 – 32, 34)

After the assault, Complainant testified that his brother "told me to give him the money out of my pocket" and "dug in my pocket and took my money, my cell phone, my car keys " (N.T., 11/21/16, pg 26, 57 - 58) Complainant testified that he "fought my way out of the house. I was trying to get out of the house and they attacked me one more time, not trying to let me out of the house." (N.T., 11/21/16, pg. 59) Once he finally managed to get out of the house, Complainant "saw a cop car. The cop car stopped and called an ambulance." (N T , 11/21/16, pg 26) After police banged on the door, Defendant, along with Complainant's brother "went out the back door, went over the fence." (N T , 11/21/16, pg. 88) Furthermore, while in the hospital, Complainant testified that his brother called to see if he was okay, when Defendant then "got on the phone and told me don't do that snitch stuff " (N.T., 11/21/16, pg. 36)

Philadelphia Police Detective Matthew Caray testified that on January 19, 2015, Complainant arrived at the 18th District and made a complaint about having been assaulted the day before (N.T , 11/21/16, pg. 65) Detective Caray interviewed Complainant about the incident and typed up his statement with Complainant seated next to him (N T., 11/21/16, pgs 65 - 66) Detective Caray then gave Complainant the opportunity to review the typed statement and to make any corrections. (N.T., 11/21/16, pg. 66) Complainant did not make any corrections before signing the bottom of each page of the Investigation Review Record while in Detective Caray's presence. (N T , 11/21/16, pgs 66 – 67)

4

During the interview, Detective Caray testified that Complainant seemed upset and cried several times throughout the interview. (N.T., 11/21/16, pg 67) Additionally, Detective Caray testified that Complainant did not appear to be under the influence of anything, as he understood Detective Caray's questions and was able to provide narrative responses to questions (N T , 11/21/16, pg. 67) In addition, Detective Caray testified that on February 17, 2015, when he picked Complainant up for the grand jury hearing, Complainant did not appear to be under the influence of anything and that he was able to have normal conversations with Complainant (N T , 11/21/16, pgs. 67 – 68)

## DISCUSSION OF THE ISSUES RAISED

## THE EVIDENCE WAS SUFFICIENT TO SUPPORT DEFENDANT'S CONVICTIONS.

In his statement of errors, Defendant complains that the evidence at trial was insufficient to support his convictions. Defendant's complaints are without merit.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Fisher,* 47 A 3d 155, 157 (Pa. Super. 2012) citing *Commonwealth v. Widmer*, 560 Pa 308, 319, 744 A.2d 745, 751 (2000) Evidence is deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. *Widmer, supra* citing *Commonwealth v. Karkaria,* 625 A.2d 1167 (Pa. 1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. *Fisher, supra.* When reviewing a sufficiency claim, the court is required to view the

5

evidence in the light most favorable to the verdict winner, and give the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Widmer, supra* citing *Commonwealth v. Chambers,* 599 A 2d 630 (Pa. 1991).

In considering a sufficiency claim, the Superior Court "may not weigh evidence, nor substitute the fact-finder's judgment with this Court's " *Commonwealth v. Hennigan,* 753 A.2d 245, 253 (Pa. Super. 2000). The facts and circumstances which have been established by the Commonwealth are not required to preclude every possibility of innocence *Id* A court may draw inferences from the facts so long as the inferred facts are more likely than not to flow from the proven facts *Commonwealth v. Wodjak,* 466 A.2d 991, 996 (Pa. 1983) The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of "wholly circumstantial evidence." *Hennigan, supra.*

In his first statement of errors, Defendant complains the evidence was insufficient to support his conviction for robbery "because there was no evidence that Defendant took or attempted to take anything from Mr. Harris." Defendant's complaint misstates the record and is without merit.

Defendant was convicted of robbery pursuant to 18 Pa C S.A. § 3701(a)(1)(ii) and conspiracy to commit robbery (inflicts serious bodily injury) pursuant to 18 Pa C.S.A § 903. Robbery is graded as a felony of the first degree, which provides in part, that a person commits robbery when in the "course of committing a theft" he "threatens another with or intentionally puts him in fear of immediate serious bodily injury " A theft occurs when one "unlawfully takes, or exercises unlawful control over, moveable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a). Section 3701(a)(2) of the

6

robbery statute states that an act is in the "course of committing a theft" if it occurs "in an attempt to commit theft or in flight after the attempt or commission." In other words, it is not necessary that a defendant have successfully completed a theft in order to commit robbery. *See Commonwealth v. Robinson*, 936 A.2d 107, 110 (Pa Super 2007)

The testimony of the Commonwealth's witnesses, as discussed above, establishes that Defendant attempted to deprive Complainant of his property when he, in concert with others, assaulted Complainant before fleeing the scene with Complainant's property, and then later threatening Complainant while he was in the hospital. The Court finds that the circumstantial evidence presented in this case by the Commonwealth is sufficient to support Defendant's convictions for robbery and conspiracy to commit robbery.

In his second statement of errors, Defendant challenges the sufficiency of the evidence for his conspiracy to commit robbery conviction "because there is no evidence from which to reasonably infer that Defendant agreed with anyone to do anything to Mr. Harris." Defendant's complaint is without merit.

Defendant was convicted of conspiracy to commit robbery (inflicts serious bodily injury) pursuant to 18 Pa. C.S.A § 903, which provides in part that a person commits conspiracy if he "agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime."

"In most cases of conspiracy, it is difficult to prove an explicit or formal agreement; hence, the agreement is generally established via circumstantial evidence, such as by "the relations, conduct, or circumstances of the parties or overt acts on the part of co-

7

conspirators.'" ***Commonwealth v. Sanchez***, 623 Pa. 253, 303, 82 A 3d 943, 973 (2013)

Once a conspiracy has been established, the actions of each co-conspirator may be imputed to the other conspirators In this regard, "[t]he law in Pennsylvania is settled that each conspirator is criminally responsible for the actions of his co-conspirator, provided that the actions are accomplished in furtherance of the common design." ***Commonwealth v. Baskerville***, 681 A.2d 195, 201 (Pa Super 1996)

Here, the Commonwealth presented evidence that Defendant acted together, with his co-conspirator, Aaron Harris, with the intent of depriving Complainant of his belongings. Defendant inflicted serious injury on Complainant, in furtherance of the conspiracy to deprive Complainant of his money, cell phone, and car keys, before fleeing the scene with his co-conspirator Thus, the Commonwealth presented sufficient evidence to support Defendant's conviction of conspiracy to commit robbery.

In his third statement of errors, Defendant complains that the evidence was insufficient to support Defendant's convictions for "aggravated assault and PIC because the Commonwealth did not disprove that Defendant was acting in self-defense after Complainant served as the aggressor, approached Defendant, and threw the first punch " Defendant's complaint is without merit.

Defendant was convicted of aggravated assault pursuant to 18 Pa.C.S A. § 2702(a), which provides in part that a person commits aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." Complainant testified that Defendant punched him in the face "[a]bout 20 times." (N.T., 11/21/16, pg. 30)

8

Moreover, a person shall be found guilty of PIC under 18 Pa.C.S A. § 907(a) "if he possesses any instrument of crime with intent to employ it criminally " The statute defines an instrument of crime as "(1) [a]nything specially made or specially adapted for criminal use (2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have " 18 Pa. C S.A. § 907(d). Complainant testified that Defendant "threw a glass cup on my face and it broke on my face " (N T., 11/21/16, pg 26) When asked about the extent of his injuries, Complainant testified that he suffered a "[b]roken nose, broken cheekbone, stitches to my nose, a lot of cuts to my face." (N.T., 11/21/16, pg. 34) It is apparent from the record that Defendant plainly used the glass cup as an "instrument of crime" as defined in subsection (a) of 18 Pa C S.A § 907 to cause further injury to Complainant after he was already severely injured.

"When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt The Commonwealth sustains this burden if it establishes at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety The Commonwealth need only prove one of these elements beyond a reasonable doubt to sufficiently disprove a self-defense claim." *Commonwealth v. Ventura*, 975 A 2d 1128, 1143 (Pa. Super. 2009) (Internal citations and quotations omitted.)

Furthermore, "[t]he law does not require an accused to elect an avenue of retreat where a reasonably prudent person would conclude that such a decision would increase his

9

or her exposure to the threatened harm." *Id.* at 1143-44 "Although the Commonwealth is required to disprove a claim of self-defense a jury is not required to believe the testimony of the defendant who raises the claim." *Commonwealth v. Houser,* 18 A.3d 1128, 1135 (Pa. 2011) (quoting *Commonwealth v. Carbone,* 574 A. 2d 584, 589 (Pa. 1990) "It remains the province of the jury to determine whether the accused's belief was reasonable, whether he was free from provocation, and whether he had no duty to retreat." *Commonwealth v. McClendon,* 874, A.2d 1223, 1230 (Pa. Super. 2005) (Internal citation omitted)

The testimony of the Commonwealth's witnesses, as discussed above, establishes that Complainant was unarmed, outnumbered, and severely beaten. Retreat for Defendant was possible without exposing him to additional harm Furthermore, there was no evidence to suggest that Complainant was continuing the fight or that he was pursuing Defendant To the contrary, it is clear from the testimony at trial that the Commonwealth met its burden in establishing that Defendant, instead of retreating, went after Complainant with a glass cup and caused even more injury to Complainant by smashing the glass on his face

## CONCLUSION

After a careful review of the record, the Court finds that there was sufficient credible evidence to support Defendant's convictions.

BY THE COURT

August 16, 2017

HON. CHARLES J CUNNINGHAM, III

10